# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| KURT A. BUZARD, | ) | Case No.: 2:05-cv-1546-RLH-LRL |
| | ) | |
| Plaintiff, | ) | **O R D E R** |
| | ) | |
| vs. | ) | (Motion to Dismiss–#17 |
| | ) | Motion to Quash Service of Personal |
| NEVADA HEALTH PROFESSIONALS | ) | Jurisdiction - #15 |
| ASSISTANCE FOUNDATION, *et al*., | ) | Motion to Dismiss - #18 |
| | ) | Motion to Extend Time for Service - #53) |
| Defendants. | ) | |
| | ) | |

Before the Court is Defendants Steven C. Snook, Ph. D. and O.A.S.I.S. Counseling Center, Inc.'s **Motion to Dismiss** (#17), filed February 6, 2006.  The Court has also considered Plaintiff's Opposition (#25), filed February 27, 2006, Plaintiff's Amended Opposition (#29), filed February 27, 2006, and Defendants' Reply (#31), filed March 13, 2006.

Also before the Court is Defendant John E. Doyle, III, M.D.'s **Motion to Quash Service of Personal Jurisdiction** (#15), filed January 31, 2006.  The Court has also considered Plaintiff's Opposition (#24), filed February 23, 2006, Plaintiff's Amended Opposition (#26), filed February 27, 2006, and Defendant's Reply (#30), filed March 6, 2006.

/ / / /

/ / / /

1

1   Also before the Court is Defendants Stephanie Barnhart and UHS of Talbott's

2   **Motion to Dismiss** (#18), filed February 8, 2006.  The Court has also considered Plaintiff's

3   Opposition (#28), filed February 27, 2006.  No Reply has been filed.

4   Also before the Court is Plaintiff's **Motion for Enlargement of Time for Service**

5   (#53), filed April 27, 2006.

6   **BACKGROUND**

7   Plaintiff, Kurt A. Buzard, brings this action against Defendants, UHS Talbott, Inc.

8   (Talbott), O.A.S.I.S. Counseling Center, Inc. (OASIS), Stephanie Barnhart (Barnhart), Steven C.

9   Snook, Ph.D. (Snook), and John E. Doyle, III, M.D. (Doyle), *inter alia*, alleging claims of

10  negligence, breach of contract, breach of fiduciary duty, defamation, invasion of privacy and false

11  light, conversion, false imprisonment, punitive damages, and conspiracy.  Plaintiff's claims arise

12  from the facts outlined below.

13  Plaintiff is an ophthalmologist residing in Las Vegas, Nevada.  On August 24,

14  2005, Plaintiff was a passenger in his vehicle when the police stopped it for a traffic violation.

15  Plaintiff consented to the search of the vehicle, and inside the police found illegal contraband

16  which Plaintiff alleges he neither knew of, nor owned.  Nonetheless, Plaintiff was charged with

17  possession of a contraband, and subsequently resolved the matter by entering into a plea

18  agreement.  In September 2003, Defendants Carol Bowers (Bowers) and Dr. Victor Rueckl

19  (Rueckl) of Nevada Health Professionals Assistance Foundation (Foundation) allegedly contacted

20  Plaintiff and instructed him, under the threat of licensure action, to submit to an evaluation at

21  Talbott for substance abuse.

22  On or about September 26, 2003, Plaintiff complied with the Foundation's request,

23  and traveled to Georgia to enter into a 96-Hour assessment program at Talbott.  Talbott is a

24  Georgia corporation that specializes in the care and treatment of individuals with alcohol and drug

25  dependencies. Upon his arrival at Talbott, Plaintiff alleges George MacNabb, M.D. (MacNabb)

26  conducted the initial assessment of Plaintiff and prepared an internal medicine evaluation, in

2

AO 72
(Rev. 8/82)

1    which he opined that there was "[n]o diagnosis of chemical dependence based upon information

2    from the patient."  (Pl.'s Compl. ¶ 18.)  Following Dr. MacNabb's assessment, Plaintiff was

3    evaluated by Dr. Snook, a psychologist employed by Oasis, who prepared a psychological

4    evaluation report which noted that subsequent evaluations needed to "rule out cocaine

5    dependence." (Pl.s' Compl. ¶ 19.)  OASIS is a corporation doing business in Georgia.   At all

6    relevant times in question, Plaintiff alleges OASIS had a contractual agreement with Talbott to

7    provide psychological evaluations of health professionals being treated at Talbott.  Dr. Snook's

8    report, Plaintiff alleges, contained false and defamatory statements and misquoted Plaintiff to

9    perpetuate a false assessment of dependence.

10          Plaintiff also alleges Ms. Barnhart, the assessment coordinator for Talbott,

11   conducted a nursing assessment of Plaintiff and prepared written progress notes, which contained

12   false and defamatory statements and misquoted Plaintiff to perpetuate a false assessment of

13   dependence.  In addition, Ms. Barnhart compiled collateral information by telephoning certain Las

14   Vegas residents regarding Plaintiff, including Plaintiff's wife, his attorney, and his psychiatrists,

15   Dr. Ron Zedek and Dr. Tom Noyes.  Plaintiff alleges Ms. Barnhart contacted these individuals

16   without his consent.

17          Before Plaintiff's discharge, Dr. Doyle, Dr. Snook, and Ms. Barnhart conducted an

18   assessment meeting with Plaintiff, during which time Ms. Bowers of the Foundation was conferred

19   telephonically.  On or about October 1, 2003, Dr. Doyle drafted a discharge summary which

20   Plaintiff alleges contained a false Axis I diagnosis of cocaine dependence in relapse, along with

21   other false and defamatory statements concerning Plaintiff.  During his stay at Talbott, Plaintiff

22   alleges Dr. Doyle specifically told him that he did not meet the DSM-IV criteria for dependency

23   but that Talbott would find a way to give him a dependency diagnosis. Plaintiff further alleges that

24   Ms. Bowers threatened that if he left Talbott he would lose his medical licence in Nevada.

25          Plaintiff alleges that Talbott shared their flawed and fictitious diagnosis with the

26   Foundation.  In September and October of 2003, Ms. Bowers allegedly informed the Arizona

AO 72
(Rev. 8/82)

1    Medical Board that Plaintiff suffered from chemical dependency.  In or about October 2003,

2    Plaintiff returned to Las Vegas from Talbott and was required to enter into a contract for further

3    monitoring with the Foundation.  This contract specifically provided for monitoring and

4    counseling through practical recovery services, a one-year aftercare program, caduceus meetings,

5    and random urinalysis testing during a two-year period.  In or about March 2004, Plaintiff entered

6    into a second contract with the Foundation wherein he agreed to further treatment and continued

7    drug testing. Throughout his contracts with the Foundation, Plaintiff alleges he has consistently

8    tested negative for any improper controlled substances.

9            In addition to the allegations above, Plaintiff claims his conspiracy cause of action

10   arises from the interaction between the Foundation, Talbott, and OASIS.  When first notified that

11   he had to be evaluated by Talbott, Plaintiff alleges Ms. Bowers served as the executive director of

12   the Foundation and had been formerly employed by Talbott.  In or about January 2004, Plaintiff

13   alleges Ms. Bowers returned to Talbott, where she currently serves as the marketing director.  As a

14   result of Ms. Bowers numerous roles, Plaintiff alleges, she created a "pipeline" of

15   business/goodwill between Talbott and the Foundation.  Plaintiff also alleges that a "pipeline"

16   existed between Talbott and OASIS, whereby OASIS agreed to provide psychological evaluations

17   of the health professionals being treated at Talbott.

18           According to Plaintiff, the Foundation, Talbott, and OASIS had a mutually

19   beneficial financial relationship.  Talbot and OASIS relied on referrals from the Foundation for

20   incoming clientele.  In turn, the Foundation allegedly received referral fees.  Moreover, the

21   Foundation allegedly relies upon Talbott and OASIS's false assessment of dependency, although

22   evidence to the contrary exists, in order to compel and coerce Nevada physicians, such as Plaintiff,

23   to enter into monitoring contracts.

24           In response to Defendants conduct, Plaintiff filed the instant suit in the Eighth

25   Judicial District Court of Clark County on September 23, 2005.  On December 30, 2005, the

26   Foundation removed this suit to federal court.

AO 72
(Rev. 8/82)

**DISCUSSION**

Defendants argue that this Court lacks personal jurisdiction over them.  As a result of which, Defendants Snook and OASIS move to dismiss this action pursuant to the Fed. R. Civ. P. 12(b)(2). Similarly, Defendant Talbott moves to dismiss pursuant to the Fed. R. Civ. P. 12(b)(2) and 12(b)(4).  Defendant Barnhart also moves to dismiss under Fed. R. Civ. P. 12(b)(2) and 12(b)(5).  And, lastly, Defendant Doyle moves to quash service for lack of personal jurisdiction.

**I. Motion to Dismiss Standard**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "lack of jurisdiction over the person." "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  A court evaluating such a motion may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).  Where a court proceeds on the basis of affidavits and without discovery and an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys. Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th Cir.1977), uncontroverted allegations in the complaint must be taken as true.  *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996).

**A.  Defendants Steven C. Snook, Ph.D. and O.A.S.I.S. Counseling Center, Inc.**

Plaintiff bears the burden of establishing that the Defendants are subject to personal jurisdiction in Nevada.  *Freeman v. Second Judicial Dist. Court*, 1 P.3d 963, 965 (Nev. 2000). Under Nevada's long-arm statute, a Nevada court "may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of [Nevada] or the Constitution of the

United States." Nev. Rev. Stat. 14.065(1). Thus, "Nevada's long-arm statute . . . reaches the limits of due process set by the United States Constitution." *Baker v. Eighth Judicial Dist. Court*, 999 P.2d 1020, 1023 (Nev. 2000). Plaintiff must demonstrate that Defendants established "minimum contacts" in Nevada so as to assure that the exercise of personal jurisdiction is proper. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Baker,* 999 P.2d at 1023. There are two types of personal jurisdiction: general and specific. *Freeman*, 1 P.3d at 965.

The exercise of general jurisdiction over a non-resident defendant is appropriate only where the defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant may be deemed present in the forum. *See Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 415 (1984). "Absent general jurisdiction, specific personal jurisdiction over a defendant may be established only where the cause of action arises from the defendant's contacts with the forum." *Trump v. Eighth Judicial Dist. Court*, 857 P.2d 740, 748 (Nev. 1993). The Ninth Circuit uses the following three-part test to determine if the exercise of specific jurisdiction over a defendant is proper:

> 1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
> 2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> 3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987). A plaintiff need only demonstrate the first two prongs to satisfy a prima facie showing of specific jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1. Purposeful Availment or Direction

The Ninth Circuit has held that the 'purposeful availment' requirement is satisfied "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir.

AO 72
(Rev. 8/82)

1   1997).  However, when the injury to the plaintiff results from an intentional tort that took place

2   outside the forum state, the court looks for "purposeful direction" under an "effects" test to

3   determine if the defendant "(1) committed an intentional act, (2) expressly directed at the forum,

4   (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Foods*

5   *Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The purposeful availment requirement

6   determines whether the nonresident defendant's conduct and connection with the forum state are

7   such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*,

8   444 U.S. 286, 297 (1980).  This requirement ensures that a nonresident defendant will not "be

9   haled into a jurisdiction as the result of random, fortuitous or attenuated contacts or based upon the

10  unilateral acts of third parties." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

11          Here, Defendants Snook and OASIS (collectively OASIS Defendants) argue that

12  this Court lacks personal jurisdiction over them.  Specifically, Dr. Snook alleges he is a resident of

13  Georgia, has never been licensed in Nevada, and has never practiced psychology or any other

14  profession, trade, or business in Nevada.  Moreover, Dr. Snook contends he has never been to

15  Nevada.  Likewise, OASIS asserts it is incorporated under the laws of Georgia and does business

16  exclusively in Georgia.  OASIS further asserts that it has never conducted business in Nevada, and

17  has never had any offices, operations, or employees in Nevada.  OASIS Defendants claim they

18  have neither executed or performed a contract in Nevada; advertised in Nevada; or sent goods to or

19  received goods from Nevada.  Aside from their Georgia ties, OASIS Defendants contend none of

20  their actions were expressly aimed at Nevada.  Because they lack minimum contacts with Nevada,

21  OASIS Defendants argue Plaintiff's claims against them should be dismissed because exercising

22  personal jurisdiction over them would violate due process.

23          Plaintiff agrees that OASIS Defendants have minimal physical contacts in Nevada,

24  but argues because their intentional conduct was purposefully directed towards Nevada, this Court

25  can exercise specific personal jurisdiction over them.  Plaintiff support his claim by alleging that

26  OASIS Defendants authored and adopted various reports, including a psychological evaluation

AO 72
(Rev. 8/82)

1  report, that contained false and defamatory statements concerning Plaintiff's alleged drug

2  dependence.  OASIS Defendants sent their reports to Talbott, and allegedly knew their reports

3  would also be transmitted to the Foundation in Nevada.  OASIS Defendants also communicated

4  the findings of their report with Ms. Bowers of the Foundation.  As a result of OASIS Defendants

5  actions, Plaintiff alleges he suffered harm to his reputation and license in Nevada, including the

6  further unnecessary treatment and regulation by the Foundation, the loss of business and insurance

7  contracts, and the infliction of emotional distress and anguish.

8          It appears that Plaintiff concedes the absence of general jurisdiction, therefore the

9  Court will determine whether it has specific personal jurisdiction over the OASIS Defendants.

10                           **a. Intentional Act**

11          Plaintiff alleges Dr. Snook issued, and OASIS adopted, a psychological evaluation

12  report that misquoted Plaintiff and noted that subsequent evaluations were needed to "rule out

13  cocaine dependence."  According to Plaintiff, OASIS Defendants' report contained false and

14  defamatory statements and perpetuated a false assessment of drug dependence despite the

15  existence of evidence to the contrary.  Plaintiff further alleges that OASIS Defendants transmitted

16  this report to Talbott with full knowledge that it would be disseminated to the Nevada Medical

17  Board, and to the Foundation.  For that conduct, Plaintiff alleges, *inter alia*, tortious claims of

18  defamation, invasion of privacy and false light, conspiracy, and false imprisonment.  Accordingly,

19  the Court finds that Plaintiff has sufficiently alleged intentional actions committed by OASIS

20  Defendants.

21                        **b.  Express Aiming at the Forum State**

22          To find OASIS Defendants expressly aimed their intentional actions at Nevada,

23  Plaintiff must allege that OASIS Defendants engaged in wrongful conduct targeted at Plaintiff

24  whom the OASIS Defendants knew to be a resident of Nevada.  *See Bancroft & Masters Inc. v.*

25  *Augusta Nat'l. Inc.*, 223 F.3d 1082,1087 (9th Cir. 2000).

26  / / / /

AO 72
(Rev. 8/82)

In the case at bar, Plaintiff alleges OASIS Defendants knew that he was being treated at Talbott for the purpose of assessing his fitness to practice medicine in Nevada. In light of this knowledge, Plaintiff asserts that OASIS Defendants transmitted their psychological evaluation report which contained false and defamatory statements to Talbott, and orally communicated their findings to the Foundation, namely Ms. Bowers. It is clear, Plaintiff claims, that OASIS Defendants knew their conduct would have substantial effects on Plaintiff's reputation and license in Nevada. By Plaintiff's account, these actions establish that OASIS Defendants expressly aimed their conduct at Nevada.

In contrast to Plaintiff's claim, OASIS Defendants argue that none of their activities were expressly aimed at Nevada. Instead, OASIS Defendants argue that Georgia was the focal point of their activities. OASIS Defendants allege that Dr. Snook evaluated Plaintiff in Georgia, Dr. Snook prepared the report summarizing his findings and sent it to Talbott in Georgia, and then Dr. Snook participated in a final assessment meeting at Talbott in Georgia. As to the latter conduct, OASIS Defendants allege that Dr. Snook did not initiate the telephonic participation of Ms. Bowers. OASIS Defendants further argue that although it may be true that Dr. Snook had reason to believe that Ms. Bowers or others at the Foundation might be apprised of the results of his evaluation and knew that Plaintiff lived in Nevada, Plaintiff still has failed to present evidence that their activities were expressly aimed at Nevada.

Although OASIS Defendants argue their activity was not expressly aimed at Nevada, the Court finds their argument unpersuasive, and highlights the relevant caselaw that supports this finding. The Court will begin its discussion with *Calder v. Jones,* 465 U.S. 783 (1984), the seminal case addressing the "effects" test. In that case, the Supreme Court found it proper for a California court to exercise personal jurisdiction over two defendants residing in Florida. *Calder,* 465 U.S. at 791. The defendants, a reporter and an editor of the Enquirer magazine, published an allegedly libelous article that was drawn from California sources, circulated largely in California, and concerned the California activities of a California resident, the

AO 72
(Rev. 8/82)

1   plaintiff. *Id*. at 788-89.   Although the defendants actions took place in Florida and they had no

2   physical contact with California, the Court held the effects of their actions were felt in California.

3   *Id*. at 789.

4          The Ninth Circuit has also applied the effects test.  In *Brainerd v. Governors of the*

5   *Univ. of Alberta*, 873 F.2d 1257, (9th Cir. 1989), the Ninth Circuit decided personal jurisdiction

6   could be exercised in Arizona over a Canadian resident.  In *Brainerd*, the plaintiff was formerly

7   employed by the University of Alberta, Canada as a faculty member.  *Id*. A dispute arose between

8   the plaintiff and his former employer regarding the alleged misuse of grant funds.  *Id*. at 1258.  A

9   settlement agreement was reached, and plaintiff subsequently found employment with the

10  University of Arizona. *Id*.

11         During the plaintiff's tenure at the University of Arizona, suspicion began to arise

12  amongst plaintiff's colleagues regarding his departure from the University of Alberta, Canada. *Id*.

13  An associate dean at the University of Arizona eventually contacted defendant, academic vice

14  president of the University of Alberta, Canada, to investigate the suspicions.  *Id*. During that

15  conversation, defendant allegedly accused plaintiff of misusing federal research funds and travel

16  funds.  *Id*.  Also, defendant allegedly told the associate dean that he would not hire plaintiff.  *Id*.

17  Although defendant did not initiate the contact, the Ninth Circuit found defendant intentionally

18  directed his activities into the forum state. *Id*. at 1259.  It was further held that defendant knew the

19  injury and harm stemming from his communications would occur in Arizona, where plaintiff

20  planned to live and work. *Id*.

21         Turning to the instant matter, the Court notes that Plaintiff traveled to Talbott for a

22  96-Hour assessment.  Plaintiff was not seeking treatment from Talbott, but was referred there by

23  the Foundation to submit to an evaluation.  Presumably, the results of that evaluation would be

24  relied upon by the Foundation.  Like *Calder*, OASIS Defendants conducted their assessment of

25  Plaintiff in Georgia, the foreign state, yet the results of the assessment were expressly aimed at

26  Nevada, the forum state.  It is undisputed that Dr. Snook evaluated Plaintiff in Georgia, drew

AO 72
(Rev. 8/82)

1    conclusions from that evaluation in Georgia, and even made recommendations, in Georgia, as to

2    what further courses of action Plaintiff needed to undergo. These actions were summarized in Dr.

3    Snook's confidential psychological evaluation report (report).

4            In his report, Dr. Snook acknowledges that Plaintiff was an ophthalmologist

5    practicing and residing in Nevada.  Dr. Snook also noted that Plaintiff could benefit from

6    treatment for his probable substance dependence disorder.  Although OASIS Defendants argue Dr.

7    Snook's report was only sent to Talbott, there is evidence to the contrary.  OASIS Defendants

8    themselves explain that Dr. Snook participated in Plaintiff's final assessment meeting.  Dr. Doyle,

9    Ms. Barnhart, and Plaintiff were also present at the meeting, while Ms. Bowers of the Foundation

10   was conferred telephonically.  At this particular meeting, Dr. Snook admits that he orally shared

11   the findings of his report.  Similar to *Brainerd*, it makes no difference whether Dr. Snook initiated

12   the call of Ms. Bowers from the forum state.  It is relevant, however, that Dr. Snook knew Ms.

13   Bowers was present and that she was acting on behalf of the Foundation.

14           Defendants argue that this case is unlike *Calder* because the focal point of their

15   activities were not in Nevada, but in Georgia.  To the contrary, the Court finds that Dr. Snook

16   expressly directed the findings of his evaluation to the Foundation.  Additionally, Dr. Snook was

17   aware that Plaintiff was being discharged from Talbott and returning to Nevada.  Dr. Snook's

18   recommendations therefore would be carried out in Nevada. Consequently, the Court finds that the

19   OASIS Defendants' intentional actions were expressly aimed at Nevada such that the OASIS

20   Defendants could reasonably anticipate being haled into court in Nevada.

21                            **c. Causing Harm in the Forum State**

22           Next, Plaintiff must allege that the harm the OASIS Defendants caused was

23   suffered in Nevada.  In the Ninth Circuit, it is unclear as to the degree of harm that must be

24   suffered in the forum state to meet the effects test. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

25   1112-13 (9th Cir. 2002).  Either the brunt of the harm, *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.

26   3d 1482, 1486 (9th Cir. 1993), or merely some significant amount of harm, must be suffered in the

AO 72
(Rev. 8/82)

forum state.  *Dole Food*, 303 F.2d at 1113*; see Keeton v. Hustler Magazine*, 465 U.S. 770, 773

(1984).  Like *Dole Food*, this Court need not decide between these standards because under either,

Plaintiff suffered sufficient harm in Nevada.

       After his discharge from Talbott, Plaintiff returned to Nevada.  As a result of

OASIS Defendants allegedly false and defamatory statements, Plaintiff alleges he suffered harm to

his reputation and license.  Moreover, Plaintiff alleges OASIS Defendants' conduct required him

to enter into a treatment contract with the Foundation.  The Court finds that Plaintiff has alleged

sufficient harm in Nevada.

       In light of the above analysis, Plaintiff has satisfied the three elements of the effects

test necessary to demonstrate purposeful direction.  The Court now moves to the remaining two

prongs to determine if specific personal jurisdiction can be exercised over OASIS Defendants.

### 2. Claims Arising Out of Defendants' Activities

       The Ninth Circuit applies a "but for" test to determine whether a particular claim

arises out of forum-related activities.  *Ballad v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  In

this case, but for OASIS Defendants allegedly false and defamatory statements, Plaintiff's claims

for defamation, invasion of privacy and false light, among others, would not have arisen.

Accordingly, Plaintiff has sufficiently met the second prong of establishing specific personal

jurisdiction.

### 3. Reasonableness

       "Once it has been decided that a defendant purposefully established minimum

contacts with a forum, '[the defendant] must present a compelling case that the presence of some

other considerations would render jurisdiction unreasonable' in order to defeat personal

jurisdiction."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002)(quoting *Burger

King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

       In determining the reasonableness of personal jurisdiction, the court considers the

following factors: "(1) the extent of the defendants' purposeful interjection into the forum state's

AO 72
(Rev. 8/82)

1  affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with

2  the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute;

3  (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

4  plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."

5  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003).

6  No one factor is determinative, rather the court is to balance all seven.  *Id*.

7         In reviewing the factors, the Court begins with the obvious interest Nevada has in

8  providing its residents with a forum to redress injuries occurring in the forum state. *See Rigdon v.*

9  *Bluff City Transfer & Storage Co*., 649 F. Supp. 263, 269 (D. Nev. 1986); *see also Keeton v.*

10  *Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984).   As discussed under the purposeful availment

11  section, Plaintiff has already shown that OASIS Defendants directed their intentional acts at

12  Nevada resulting in Plaintiff suffering harm in Nevada.  This finding also supports the conclusion

13  that OASIS Defendants purposefully interjected themselves into Nevada.  While inconvenient, and

14  perhaps burdensome for OASIS Defendants to litigate this matter in Nevada, it does not rise to a

15  due process violation.

16         Given the modern advances in technology and communications, the location of

17  witnesses and evidence is not weighed heavily. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d

18  1316, 1323 (9th Cir. 1998).  However, the Court still recognizes that witnesses are located in both

19  Nevada and Georgia, hence the issue of efficiency is considered to be neutral.  While exercising

20  jurisdiction in this Court does not implicate sovereignty concerns of Georgia; if, however, a

21  conflict exists between Nevada's laws and the "fundamental social policies" of Georgia, such a

22  dispute can be resolved through choice of law rules, not jurisdiction.  *Haisten v. Grass Valley*

23  *Medical Reimbursement*, 784 F.2d 1392, 1402 (9th Cir. 1986).  The Court also notes that

24  Plaintiff's convenience is not of paramount importance, and that Georgia is an alternative forum.

25         In balancing the factors discussed above, the Court finds that OASIS Defendants

26  have not presented a compelling case such that exercising specific personal jurisdiction over them

AO 72
(Rev. 8/82)

1    would be unreasonable.  For all of the reasons discussed, this Court will exercise specific personal

2    jurisdiction over OASIS Defendants.

3    **B. Defendant John E. Doyle, III, M.D.**

4            Defendant contends that service of Plaintiff's summons and compliant must be

5    quashed for lack of personal jurisdiction.  Because Defendant is a resident of Georgia, licensed to

6    practice in Georgia, and has no contacts with the State of Nevada, he argues that this Court has no

7    personal jurisdiction over him.  Plaintiff, however, asserts that specific personal jurisdiction can be

8    exercised over Defendant.  According to Plaintiff, Defendant intentionally submitted false and

9    defamatory statements to the Foundation, thereby resulting in harm to Plaintiff's professional

10   reputation and license in Nevada.  Plaintiff also adds that as a result of Defendant's false

11   diagnosis, the Foundation required him to enter into contracts for further testing and evaluations.

12           Because Plaintiff apparently concedes the absence of general jurisdiction, the Court

13   will only address whether it has specific personal jurisdiction over Defendant.

14   **1. Purposeful Availment or Direction**

15   **a. Intentional Act**

16           In his complaint, Plaintiff alleges that Defendant drafted a discharge summary

17   which contained a false Axis I diagnosis of cocaine dependence in relapse, along with other false

18   and defamatory statements concerning Plaintiff.  Plaintiff also alleges that Defendant specifically

19   told Plaintiff that he did not meet the DSM-IV criteria for dependency but that Talbott would find

20   a way to give him a dependency diagnosis.  This flawed and fictitious diagnosis, Plaintiff alleges,

21   was shared with the Foundation.  Because of Defendant's alleged conduct, Plaintiff asserts tort

22   claims of defamation, conspiracy, false imprisonment, and invasion of privacy and false light.

23   Plaintiff has sufficiently alleged that Defendant committed intentional acts.

24   **b. Express Aiming at the Forum State**

25           Defendant claims his acts were not expressly aimed at Nevada, but rather his

26   assessment of Plaintiff's chemical dependence were actions that took place in Georgia.  In

AO 72
(Rev. 8/82)

1   performing this assessment, Defendant argues that Plaintiff has not shown that he intended to

2   target Nevada or that Defendant had any interactions with the Foundation.  Defendant argues that

3   his diagnosis has not been published or circulated in Nevada.  Defendant further argues that

4   Plaintiff cannot prove that "but for" Defendant's diagnosis, he would not have been required to

5   enter into a contract with the Foundation for monitoring.  Plaintiff counters by asserting that

6   Defendant knew Plaintiff had been referred to Talbott by the Foundation for the sole purpose of

7   evaluating his dependency on any illicit substances.  In having this knowledge, Plaintiff argues that

8   Defendant knew his false diagnosis would be sent to Nevada's Medical Board, among others, and

9   that his diagnosis would affect Plaintiff's Nevada license and reputation adversely.

10          Although Defendant alleges that his assessment and diagnosis of Plaintiff took

11   place in Georgia, the Court finds that those actions were expressly aimed at Nevada.  It is

12   undisputed that Plaintiff went to Talbott for the sole purpose of having a 96-Hour assessment

13   performed.  While at Talbott, Defendant conducted an assessment of Plaintiff.  Presumably,

14   Defendant knew that Plaintiff was an ophthalmologist residing in Nevada, and that Plaintiff was

15   only being assessed by Talbott, not treated.  Prior to Plaintiff's discharge, Defendant attended a

16   final assessment meeting of Plaintiff which included other committee members, Plaintiff, and

17   participating telephonically, Ms. Bowers of the Foundation.  On or about October 1, 2003,

18   Defendant drafted a discharge summary of Plaintiff that allegedly contained a false axis I of drug

19   dependency.  Defendant does not dispute that his confidential assessment was disclosed to the

20   Foundation.  Based on these facts, it is clear that Defendant's conduct occurred in Georgia, but that

21   Defendant knew or should have known that Plaintiff would feel the effects of his assessment and

22   diagnosis in Nevada, where Plaintiff intended to return after his assessment at Talbott.

23          For all of the reasons stated, the Court finds that Defendant expressly aimed his

24   intentional activities at Nevada.

25   / / / /

26   / / / /

AO 72
(Rev. 8/82)

15

### c. Causing Harm in the Forum State

As a result of Defendant's intentional actions, Plaintiff alleges he suffered the temporary loss of contracts with health care providers, injury to his reputation and business, and extreme mental distress, in Nevada.   Plaintiff also alleges that Defendant's conduct had a substantial impact on the Foundation's recommended course of treatment.  Accordingly, the Court finds that Plaintiff has alleged sufficient harm in Nevada.

In light of the preceding analysis, Plaintiff has satisfied the three elements of the effects test necessary to demonstrate purposeful direction.  The Court now moves to the remaining two prongs to determine if specific personal jurisdiction can be exercised over Defendant.

### 2. Claims Arising Out of Defendant's Activities

But for the Defendant's false and defamatory statements, Plaintiff alleges the Foundation would not have required him to enter into a contract for treatment, nor would he have suffered harm to his reputation and business, and consequently, his causes of action against Defendant would not have arisen.

### 3.  Reasonableness

For the same reasons discussed under the OASIS Defendants analysis, the Court finds Defendant has not presented a compelling case to demonstrate that subjecting him to suit in Nevada is unreasonable.

### C. Defendants Stephanie Barnhart and UHS of Talbott

Defendants Barnhart and Talbott (collectively Talbott Defendants) bring separate motions to dismiss.  Barnhart moves to dismiss this action for lack of personal jurisdiction, and insufficiency of service of process. Barnhart is a resident of Georgia, and claims that she has never conducted business in Nevada, does not maintain any business or personal residences in Nevada, has no family or friends in Nevada, and has not traveled to Nevada on a regular basis for any reason.  In fact, Barnhart admits that she has only visited Reno, Nevada, as a young teenager.  For her lack of contacts with Nevada, Barnhart argues that it would be unreasonable to exercise

AO 72
(Rev. 8/82)

personal jurisdiction over her.  Moreover, Barnhart claims service of process was ineffective as she was not served with a summons issued by or on behalf of this Court.

Similarly, Talbott moves to dismiss this action for lack of personal jurisdiction, and insufficiency of process. Talbott is a Georgia corporation, and alleges that it has no qualifying contacts with Nevada, it is not registered with the Secretary of State in Nevada, and it has no officers, directors, or employees domiciled in Nevada.   As a result of its insufficient minimum contacts with Nevada, Talbott argues that this Court lacks personal jurisdiction over it.   Talbott further argues that service of process was not effected because the wrong entity was served.

In contrast to Talbott Defendants' allegations, Plaintiff contends that specific personal jurisdiction may be exercised over them.  In regard to Talbott's allegation, Plaintiff contends that a search of the Georgia Secretary of State website revealed no entity named UHS of Talbott, L.P.  Plaintiff further contends he acted in good faith in attempting to serve the correct entity.  Notwithstanding, Plaintiff argues that Talbott Defendants still had adequate notice that an action had been brought and subsequently received notice of the removal of the action to Federal court.  Plaintiff, therefore, claims proper service will be effected within the 120 day time frame allotted by Rule 4(m) of the Fed. R. Civ. P.  Plaintiff also requests the Court to reserve judgment pending proper service in Federal court.  Plaintiff suggests that proper relief for Talbott Defendants would be to quash service, instead of dismissing the action against them.

Before the Court determines whether it has personal jurisdiction over Talbott Defendants, it must first determine whether Talbott Defendants were properly served.

**1.  Service of Process**

Although the time has yet to expire for Talbott Defendants to file an opposition to Plaintiff's Motion to Extend Time, the Court, nonetheless, will issue a ruling in the interest of expediting the proceedings.

A state court is divested of jurisdiction upon removal of the action to federal court.  28 U.S.C. § 1446.  In such a case, a federal court cannot exercise personal jurisdiction over the

1    defendant until the defendant has been properly served under Fed. R. Civ. P. 4.  *Direct Mail*

2    *Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  If

3    service is incomplete, defective, or a defendant has not been served at all prior to removal, then

4    service must be completed or perfected in compliance with the federal rules.  28 U.S.C. § 1448.[1]

5    A plaintiff has a 120 days from the date of removal to effect proper service.  *See* Fed. R. Civ. P.

6    4(m); *Vasquez v. N. County Transit Dist.*, 292 F.3d 1049, 1053 (9th Cir. 2002).  If plaintiff fails to

7    properly serve within the 120 days, then the court may extend the time to serve provided good

8    cause is shown.  *See* Fed. R. Civ. P. 4(m).

9             Here, Ms. Barnhart indicates on or about January 17, 2006 she was served with a

10    summons and complaint issued by the Nevada state court.  Sometime later, Ms. Barnhart learned

11    that this action had been removed to Federal court on December 30, 2005.  Because she was not

12    served with a federal summons, Ms. Barnhart argues that this case must be dismissed for

13    insufficiency of service of process.  Similarly, Talbott argues that it was not properly served with

14    Plaintiff's summons and complaint.  Talbott specifically claims that Plaintiff failed to accurately

15    identify it as a Defendant, and furthermore, sought to serve an agent not authorized to accept

16    service on its behalf.  The agent Plaintiff attempted to serve refused to accept service of the

17    complaint and summons.  Talbott also claims because service of process was ineffective, it is now

18    too late to effect service within the 120 day time frame proscribed by Rule 4(m) of the Fed. R. Civ.

19    P.

20             At the outset, the Court notes that although Talbott Defendants were improperly

21    served, Plaintiff still has the opportunity to perfect or complete service under the federal rules.

22

23             [1]  28 U.S.C. § 1448 provides:
            In all cases removed from any State court to any district court of the
24            United States in which any one or more of the defendants has not been
            served with process or in which service has not been perfected prior to
25            removal, or in which process served proves to be defective, such process
            or service may be completed or new process issued in the same manner as
26            in cases originally filed in such district court.

AO 72
(Rev. 8/82)

1    Plaintiff has a 120 days from the date of removal to effect proper service on Talbott Defendants.

2    Since this action was removed to federal court on December 30, 2005, Plaintiff had until May 1,

3    2006 to properly serve Talbott Defendants.  The record indicates that Plaintiff was issued a Federal

4    court summons as to Ms. Barnhart and Talbott on April 25, 2006. On April 27, 2006, Plaintiff

5    requested this Court to extend the time of service.  Having shown good cause, the Court will grant

6    Plaintiff two weeks from the date of this Order to properly serve the Talbott Defendants.

7             Assuming the Talbott Defendants will be properly served, the Court will precede in

8    addressing whether specific personal jurisdiction can be exercised over them.

9                              **2. Purposeful Availment or Direction**

10                                      **a. Intentional Act**

11            Plaintiff alleges that Ms. Barnhart conducted a nursing assessment of Plaintiff and

12   prepared written progress notes, which contained false and defamatory statements and misquoted

13   Plaintiff to perpetuate a false assessment of dependence.  Plaintiff also alleges that Ms. Barnhart

14   complied collateral information by telephoning certain Las Vegas residents regarding Plaintiff,

15   including Plaintiff's wife, attorney, and psychiatrists.  According to Plaintiff, these individuals

16   were contacted without his consent.  Before his discharge, Plaintiff alleges Ms. Barnhart, among

17   others, conducted a final assessment meeting with Plaintiff, during which time Ms. Bowers of the

18   Foundation conferred telephonically.

19            Plaintiff further alleges that Ms. Barnhart knew that her false and defamatory

20   statements would be sent to Nevada's Medical Board, among others, and that Plaintiff's Nevada

21   license and reputation would be adversely affected.  In addition to these allegations, Plaintiff

22   contends that Talbott fully sanctioned and adopted Ms. Barnhart's false reports by transmitting

23   them to the Nevada Medical Board and the Foundation.  As a result, Plaintiff alleges he suffered

24   the temporary loss of business contracts with health care providers, was injured in his reputation

25   and business, and suffered extreme mental distress.  For Talbott Defendants conduct, Plaintiff

26   / / / /

AO 72
(Rev. 8/82)

1    alleges several causes of actions including defamation, invasion of privacy and false light,

2    conspiracy, and false imprisonment.

3           In light of the above, Plaintiff has sufficiently alleged that Talbott Defendants acted

4    intentionally.

5                              **b. Express Aiming at the Forum**

6           In this case, Plaintiff alleges that Talbott Defendants' intentional acts directly

7    targeted him in Nevada.  Because Talbott Defendants knew their allegedly flawed and false reports

8    were being transmitted to the Foundation – as they conferred telephonically with Ms. Bowers of

9    the Foundation– and, in turn, the Nevada Medical Board, Plaintiff argues these actions were

10   directed at Nevada.  Plaintiff also notes that Talbott Defendants knew their reason for treating

11   Plaintiff was to evaluate his fitness to practice medicine in Nevada and to assess his dependence

12   on any chemical substances.

13          Talbott Defendants dispute Plaintiff's claims by arguing that all of the alleged

14   conduct occurred in Georgia.  Talbott Defendants specifically indicate that Plaintiff sought their

15   assistance in Georgia and that the alleged medical records that cast Plaintiff in a false light were

16   created in Georgia.  According to the Talbott Defendants, the mere fact that information regarding

17   Plaintiff's case was transmitted to another state does not vest that forum with personal jurisdiction.

18   Talbott Defendants further allege that the communication of Plaintiff's records to the Foundation

19   would be privileged as a communication to an interested party.  Talbott Defendants also argue that

20   Ms. Barnhart's telephone calls to Nevada does not establish personal jurisdiction.  Talbott

21   Defendants rely on *Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005), *Marler v. Hiebert*,

22   943 S.W. 2d 853 (Mo. Ct. App. 1997), and *Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972) to

23   support their arguments.

24          The Court will discuss each case in turn.  In *Harlow*, the plaintiff, a resident of

25   Maine, traveled to a hospital in Massachusetts to have a surgical procedure performed. *Harlow*,

26   432 F.3d at 53.  During surgery, the plaintiff suffered a stroke. *Id*. at 54.  The plaintiff brought suit

AO 72
(Rev. 8/82)

1    in Maine for the hospital's alleged negligence, and then the hospital moved to dismiss for lack of

2    personal jurisdiction. *Id.*  The court found that the place of the alleged tort was not Maine, but

3    Massachusetts; there was no evidence that the hospital purposefully induced plaintiff to leave

4    Maine to come to Massachusetts; and there was no evidence that the hospital induced the

5    pediatrician to refer the patient to Maine. *Id.* at 62. Unlike putting goods into the stream of

6    commerce, the court found that the hospital rendered medical care, a professional and highly

7    personal service, and it did so entirely in Massachusetts.  *Id.* at 63.

8            Similarly, in *Marler*, the plaintiff brought suit against defendant, a physician, in

9    Missouri alleging a claim for wrongful death.  *Marler*, 943 S.W. 2d at 854. The decedent was

10   admitted to a hospital in Kansas under the care of defendant. *Id.*  Because medical complications

11   arose, defendant contacted a Missouri physician with Cardiovascular Consultants to make

12   arrangements for the decedent's transfer to a hospital in Missouri. *Id.*  After being transferred, the

13   decedent died. *Id.*  To demonstrate that defendant purposefully directed his acts into the state of

14   Missouri, plaintiff alleged the defendant had an employment contract with Cardiovascular

15   Consultants, transferred the decedent to a Missouri physician, and represented his relationship with

16   the Missouri hospital and Cardiovascular Consultants physicians in Missouri to emphasize his ties

17   in Missouri. *Id.* at 856.

18           The plaintiff also argued that defendant transacted business in Missouri by

19   transmitting the decedent's medical records by telephone and fax to the Missouri doctor. *Id.*  The

20   telephone calls, the court found, were made immediately before and relating to the transfer of

21   decedent to Missouri for emergency care, and the records were transmitted to support the care to

22   be given by the Missouri physician. *Id.* at 857. The court further held that the telephone calls were

23   not made for advice in the proper treatment of a patient and, thus, did not amount to the

24   transaction of business in Missouri. *Id.*  The court concluded by holding that defendant's actions

25   were not intended to have an effect in Missouri and there was no showing that he purposefully

26   availed himself of the privilege of conducting activities in Missouri. *Id.*

AO 72
(Rev. 8/82)

1     Lastly, in *Wright*, the plaintiff, a South Dakota resident, was treated by defendant in

2  South Dakota and given a prescription for unlimited refills. *Wright*, 459 F.2d at 287. Plaintiff

3  moved to Idaho, and at plaintiff's request defendant provided her with copies of the original

4  prescription. *Id*.  The plaintiff was allegedly injured from use of the prescribed medicine. *Id*.  The

5  Ninth Circuit upheld the Idaho district court's dismissal of the case for lack of personal

6  jurisdiction holding that the mailing of the prescriptions to Idaho did not constitute a new

7  prescription, but simply confirmation of the original diagnosis and prescription. *Id*. at 288-89.  If

8  defendant was held guilty of malpractice, it was through acts of diagnosis and prescription

9  performed in South Dakota. *Id*.  The court noted that in cases of personal services the focus must

10 be on the place where the services are rendered, since this is the place of the receiver's need.

11 Those services, the court stated, are directed at no place but to the needy person.  *Id*. at 289. It is in

12 the very nature of such services that their consequences will be felt wherever the person may

13 choose to go, therefore exercising personal jurisdiction in this situation is unreasonable. *Id*. at 290.

14     Defendants rely on *Harlow* and *Wright* in demonstrating that exercising personal

15 jurisdiction in the forum state over a medical provider who provides medical care in the foreign

16 state is unreasonable. The Court agrees with that finding, but concludes that the facts of both cases

17 are distinguishable from the instant matter.  The patients in both *Harlow* and *Wright* received

18 medical treatment in the foreign state. Unlike those patients, Plaintiff did not seek or receive

19 medical treatment in the foreign state.  Plaintiff traveled to Talbott for the purpose of having a 96-

20 Hour assessment performed.  An assessment, unlike treatment, is a process by which an individual

21 is evaluated, and a diagnosis is thereby rendered.  From the nature of Talbott Defendants activities,

22 it appears that their services were provided to advise the Foundation in the appropriate treatment

23 for Plaintiff.

24     Defendants also argue that the *Marler* court rejected the notion that transmitting

25 medical data by telephone and fax from the foreign state to the forum state established personal

26 jurisdiction in the forum state.  In reaching that conclusion, the *Marler* court noted that by

1    transmitting the medical data the defendant was not seeking advice from a physician in the forum

2    state, nor was the defendant charged a fee by the forum state's physician.  Instead, the court found

3    that defendant's telephone call was immediately before and relating to the transfer of the decedent

4    to the forum state, and that the decedent's records were transmitted to support the care to be given

5    by the forum state's physician.  Hence, those actions did not amount to the transaction of business

6    in the forum state. Here, Ms. Barnhart placed telephone calls to Plaintiff's wife, psychiatrists, and

7    attorney, all of whom reside in Nevada.  The information collected from these individuals were to

8    be used in connection with Plaintiff's assessment.  Unlike *Marler*, Ms. Barnhart's calls were made

9    for the purpose of gathering information that would aide in assessing Plaintiff.

10           The Court recognizes that Ms. Barnhart's telephone calls do not per se establish

11   personal jurisdiction.  However, her telephone calls in addition to performing a psycho-social

12   evaluation of Plaintiff which allegedly contained false and defamatory statements establishes

13   intentional acts expressly aimed at Nevada.  It is undisputed that the information compiled by Ms.

14   Barnhart was provided to the Foundation.  Talbott Defendants knew or should have known that the

15   assessment they performed, and the records they composed therefrom, were done to provide the

16   Foundation with a diagnosis of Plaintiff's condition and recommended courses of action.  Thus,

17   for the reasons stated, Talbott Defendants expressly aimed their intentional activities towards

18   Nevada.

19                      **c. Causing Harm in the Forum State**

20           As a result of Talbott Defendants alleged conduct, Plaintiff alleges he suffered harm

21   to his reputation and license in Nevada.  Plaintiff also contends that he was required to enter into a

22   treatment program offered by the Foundation.  Plaintiff has sufficiently alleged harm in Nevada.

23           Based on the preceding analysis, Plaintiff has satisfied the three elements of the

24   effects test necessary to demonstrate purposeful direction.  Now, the Court will discuss the

25   remaining two prongs to determine if specific personal jurisdiction can be exercised over the

26   Talbott Defendants.

AO 72
(Rev. 8/82)

1              **2. Claims Arising Out of Defendants' Activities**

2              But for Talbott Defendant's alleged intentional actions, Plaintiff claims would not

3    have arisen.  Accordingly, Plaintiff has met this prong.

4              **3. Reasonableness**

5              For the same reasons discussed under the OASIS Defendants analysis, the Court

6    finds that Talbott Defendants have not presented a compelling case to show that exercising

7    jurisdiction over them would not comport with fair play and substantial justice.  Accordingly, the

8    Court has specific personal jurisdiction over the Talbott Defendants.[2]

9                                  **CONCLUSION**

10             Accordingly, and for good cause appearing,

11             IT IS HEREBY ORDERED that Defendants Steven C. Snook, Ph.D. and O.A.S.I.S.

12   Counseling Center, Inc.'s Motion to Dismiss (#17) is DENIED.

13             IT IS FURTHER ORDERED that Defendant John E. Doyle, III, M.D.'s Motion to

14   Quash Service of Personal Jurisdiction (#15) is DENIED.

15             IT IS FURTHER ORDERED that Defendants Stephanie Barnhart and UHS of

16   Talbott's Motion to Dismiss (#18) is DENIED.

17             IT IS FURTHER ORDERED that Plaintiff's Motion for Enlargement of Time for

18   Service (#53) is GRANTED.

19

20             Dated:   May 11, 2006.

21

22                                                _____

23                                                ROGER L. HUNT
                                                  **United States District Judge**

24

25   _____

26       [2] The Court will not discuss whether is has general jurisdiction over Talbott since it has
     already determined that specific jurisdiction exists.

AO 72
(Rev. 8/82)