UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KURT A BUZARD, M.D., ) | Case No.: 2:05-cv-01546-RLH-LRL |
| ) | |
| Plaintiff, ) | **O R D E R** |
| ) | |
| vs. ) | (Motion to Dismiss and, Alternatively, a Motion for an Order Directing Plaintiff to Serve a More Definite Statement–#111) |
| ) | |
| NEVADA HEALTH PROFESSIONALS ) | |
| ASSISTANCE FOUNDATION, *et al.*, ) | |
| ) | |
| Defendant(s). ) | |

Before the Court is Defendant George M. MacNabb's **Motion to Dismiss and, Alternatively, a Motion for an Order Directing Plaintiff to Serve a More Definite Statement** (#111), filed July 28, 2006. The Court has also considered Plaintiff Kurt Buzard, M.D.'s Opposition (#118), filed August 15, 2006, and Defendant's Reply (#122), filed August 24, 2006.

**BACKGROUND**

The facts of this case are taken from the Court's previous Order of May 11, 2006 and are restated herein as follows:

Plaintiff is an ophthalmologist residing in Las Vegas, Nevada. On August 24, 2005, Plaintiff was a passenger in his vehicle when the police stopped it for a traffic violation. Plaintiff consented to the search of the vehicle, and inside the police found illegal contraband

1

1  which Plaintiff alleges he neither knew of, nor owned.  Nonetheless, Plaintiff was charged with
2  possession of a contraband, and subsequently resolved the matter by entering into a plea
3  agreement.  In September 2003, Defendants Carol Bowers (Bowers) and Dr. Victor Rueckl
4  (Rueckl) of Nevada Health Professionals Assistance Foundation (Foundation) allegedly contacted
5  Plaintiff and instructed him, under the threat of licensure action, to submit to an evaluation at
6  Talbott for substance abuse.
7  　　　　On or about September 26, 2003, Plaintiff complied with the Foundation's request,
8  and traveled to Georgia to enter into a 96-Hour assessment program at Talbott.  Talbott is a
9  Georgia corporation that specializes in the care and treatment of individuals with alcohol and drug
10 dependencies. Upon his arrival at Talbott, Plaintiff alleges George MacNabb, M.D. (MacNabb)
11 conducted the initial assessment of Plaintiff and prepared an internal medicine evaluation, in
12 which he opined that there was "[n]o diagnosis of chemical dependence based upon information
13 from the patient." (Pl.'s Compl. ¶ 18.)  Following Dr. MacNabb's assessment, Plaintiff was
14 evaluated by Dr. Snook, a psychologist employed by OASIS, who prepared a psychological
15 evaluation report which noted that subsequent evaluations needed to "rule out cocaine
16 dependence." (Pl.s' Compl. ¶ 19.)  OASIS is a corporation doing business in Georgia.   At all
17 relevant times in question, Plaintiff alleges OASIS had a contractual agreement with Talbott to
18 provide psychological evaluations of health professionals being treated at Talbott.  Dr. Snook's
19 report, Plaintiff alleges, contained false and defamatory statements and misquoted Plaintiff to
20 perpetuate a false assessment of dependence.
21 　　　　Plaintiff also alleges Ms. Barnhart, the assessment coordinator for Talbott,
22 conducted a nursing assessment of Plaintiff and prepared written progress notes, which contained
23 false and defamatory statements and misquoted Plaintiff to perpetuate a false assessment of
24 dependence.  In addition, Ms. Barnhart compiled collateral information by telephoning certain Las
25 Vegas residents regarding Plaintiff, including Plaintiff's wife, his attorney, and his psychiatrists,
26

2

AO 72
(Rev. 8/82)

Dr. Ron Zedek and Dr. Tom Noyes. Plaintiff alleges Ms. Barnhart contacted these individuals without his consent.

Before Plaintiff's discharge, Dr. Doyle, Dr. Snook, and Ms. Barnhart conducted an assessment meeting with Plaintiff, during which time Ms. Bowers of the Foundation was conferred telephonically. On or about October 1, 2003, Dr. Doyle drafted a discharge summary which Plaintiff alleges contained a false Axis I diagnosis of cocaine dependence in relapse, along with other false and defamatory statements concerning Plaintiff. During his stay at Talbott, Plaintiff alleges Dr. Doyle specifically told him that he did not meet the DSM-IV criteria for dependency but that Talbott would find a way to give him a dependency diagnosis. Plaintiff further alleges that Ms. Bowers threatened that if he left Talbott he would lose his medical license in Nevada.

Plaintiff alleges that Talbott shared their flawed and fictitious diagnosis with the Foundation. In September and October of 2003, Ms. Bowers allegedly informed the Arizona Medical Board that Plaintiff suffered from chemical dependency. In or about October 2003, Plaintiff returned to Las Vegas from Talbott and was required to enter into a contract for further monitoring with the Foundation. This contract specifically provided for monitoring and counseling through practical recovery services, a one-year aftercare program, caduceus meetings, and random urinalysis testing during a two-year period. In or about March 2004, Plaintiff entered into a second contract with the Foundation wherein he agreed to further treatment and continued drug testing. Throughout his contracts with the Foundation, Plaintiff alleges he has consistently tested negative for any improper controlled substances.

In addition to the allegations above, Plaintiff claims his conspiracy cause of action arises from the interaction between the Foundation, Talbott, and OASIS. When first notified that he had to be evaluated by Talbott, Plaintiff alleges Ms. Bowers served as the executive director of the Foundation and had been formerly employed by Talbott. In or about January 2004, Plaintiff alleges Ms. Bowers returned to Talbott, where she currently serves as the marketing director. As a result of Ms. Bowers numerous roles, Plaintiff alleges, she created a "pipeline" of

AO 72
(Rev. 8/82)

business/goodwill between Talbott and the Foundation. Plaintiff also alleges that a "pipeline" existed between Talbott and OASIS, whereby OASIS agreed to provide psychological evaluations of the health professionals being treated at Talbott.

According to Plaintiff, the Foundation, Talbott, and OASIS had a mutually beneficial financial relationship. Talbot and OASIS relied on referrals from the Foundation for incoming clientele. In turn, the Foundation allegedly received referral fees. Moreover, the Foundation allegedly relies upon Talbott and OASIS's false assessment of dependency, although evidence to the contrary exists, in order to compel and coerce Nevada physicians, such as Plaintiff, to enter into monitoring contracts.

In response to Defendants conduct, Plaintiff filed the instant suit in the Eighth Judicial District Court of Clark County on September 23, 2005. On December 30, 2005, the Foundation removed this suit to federal court. Thereafter, Defendants Talbott, OASIS, Ms. Barnhart, Dr. Snook, and Dr. Doyle moved this Court to dismiss the case against them, all asserting, among other defenses, lack of personal jurisdiction.

On May 11, 2006, this Court issued an Order declaring it had personal jurisdiction over the Defendants, finding Plaintiff sufficiently alleged facts demonstrating that Defendants intentionally issued a false drug dependency assessment that caused harm to Plaintiff's reputation, medical license and business relationships in Nevada. The Defendants then filed a Motion to Certify the Issue of Personal Jurisdiction for Interlocutory Appeal, which this Court denied on September 6, 2006.

Now before the Court is Defendant MacNabb's Motion to Dismiss [hereinafter Defendant]. Defendant is an employee of Talbott, one of the previous Defendants over which this Court has already found personal jurisdiction. Defendant asks this Court to dismiss the action against him for lack of jurisdiction and failure to state a claim upon which relief can be granted. Alternatively, Defendant seeks an Order directing Plaintiff to serve a more definite statement. The Court now turns to the merits of Defendant's motions.

4

**DISCUSSION**

After consideration of the pleadings, the Court finds that it has personal jurisdiction over Defendant on which to proceed. Further, the Court finds that Plaintiff's complaint sufficiently states a claim upon which relief can be granted, and that it is not so vague and ambiguous as to require a more definite statement. Accordingly, the Court denies each motion.

The Court now addresses each motion individually.

**I. Motion to Dismiss under Fed. R. Civ. P. 12(b)(2)**

    **A. Standard**

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "lack of jurisdiction over the person." "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A court evaluating such a motion may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. *Data Disc., Inc. v. Sys. Tech Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Where a court proceeds on the basis of affidavits and without discovery and an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). Although the Plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems Inc. v. Jobar International Inc.*, 551 F.2d 784, 787 (9th Cir. 1997), uncontroverted allegations in the complaint must be taken as true, *AT & T v. Compagnie Bruxelles Lambert*, 94. F.3d 586, 588 (9th Cir. 1996).

    **B. Personal Jurisdiction over Defendant MacNabb**

Plaintiff bears the burden of establishing that Defendant is subject to personal jurisdiction in Nevada. *Freeman v. Second Judicial Dist. Court*, 1 P.2d 963, 965 (Nev. 2000). Under Nevada's long-arm statute, a Nevada Court "may exercise jurisdiction over a party to a civil

action on any basis not inconsistent with the constitution of [Nevada] or the Constitution of the United States." Nev. Rev. Stat. 14.065(1). Thus, "Nevada's long-arm statute . . . reaches the limits of due process set by the United States Constitution." *Baker v. Eighth Judicial Dist. Ct.*, 999 P.2d 1020, 1023 (Nev. 2000). Plaintiff must demonstrate that Defendant established "minimum contacts" in Nevada so as to assure that the exercise of personal jurisdiction is proper. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Baker*, 999 P.2d at 1023. There are two types of personal jurisdiction: general and specific. *Freeman*, 1 P.2d at 965.

The exercise of general jurisdiction over a non-resident defendant is appropriate only where the defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant may be deemed present in the forum. *See Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 415 (1984). "Absent general jurisdiction, specific personal jurisdiction over a defendant may be established only where the cause of action arises from the defendant's contacts with the forum." *Trump v. Eighth Judicial Dist. Ct.*, 857 P.2d 740, 748 (Nev. 1993).

It appears that Plaintiff argues that this Court maintains only specific jurisdiction over the Defendant, and therefore the Court discusses solely the issue of specific jurisdiction. The Ninth Circuit uses the following three-part test to determine if the exercise of specific jurisdiction over a defendant is proper:

(1) the nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). A plaintiff need only demonstrate the first two prongs to satisfy a prima facie showing of specific jurisdiction. *Schwarzenegger*, 374 F.3d at 802.

//

**1. Purposeful Availment or Direction**

The Ninth Circuit has held that the "purposeful availment" requirement is satisfied "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997). However, when the injury to the plaintiff results from an intentional tort that took place outside the forum state, the court looks for "purposeful direction" under an "effects" test to determine if the defendant "(1) committed an intentional act; (2) expressly directed at the forum; (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Foods Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

**a. Intentional Act**

Defendant argues that he has not committed an intentional act because his assessment of Plaintiff was favorable. Thus, the argument follows, is that he could not have committed an act that resulted in the false and defamatory statements alleged by Plaintiff. While it is true that Plaintiff made no allegation as to Defendant individually, Defendant was named in the complaint as one of the "Talbott Defendants," against whom Plaintiff alleged numerous intentional acts amounting to various torts.

For example, Plaintiff alleged that "the Talbott Defendants, *individually, each of them, or all of them*, negligently, recklessly, or intentionally provided, verbally and in writing, to the Foundation, the Foundation Defendants, and the Nevada Board of Medical Examiners false statement of fact regarding Dr. Buzard, to wit: that Dr. Buzard suffered from cocaine dependence." (Compl. ¶ 214) (emphasis added.) Because Defendant is a "Talbott Defendant," against whom intentional acts are alleged, the Court finds that Plaintiff's complaint sufficiently alleges that Defendant committed intentional acts.

**b. Expressly directed at the forum**

Defendant next argues Plaintiff failed to allege that Defendant engaged in wrongful conduct targeted at Plaintiff whom Defendant knew was a Nevada resident. To support this

argument, Defendant distinguishes two cases, *Calder* and *Brainerd*. In *Calder*, the Supreme Court found that California had proper jurisdiction over a Florida resident with no California contacts who published a libelous article for the National Enquirer. *Calder v. Jones*, 465 U.S. 783, 791, 798 (1984). The *Calder* Court found jurisdiction because the article was drawn from California sources, and California was both the focal point of the story and the harm suffered. *Id.* at 788-89.

Defendant attempts to distinguish *Calder* by arguing that unlike the defendants in *Calder*, Plaintiff does not allege that Defendant wrote false or libelous statements, disseminated the findings of the report anywhere outside of Georgia, or that Plaintiff felt the effects of Defendant's favorable report. However, Plaintiff's complaint sufficiently alleges that Defendant "negligently, recklessly or intentionally published . . . to the Foundation, the Foundations, and the Board of Medical Examiners false statement of fact," and as a "result of the defamation of . . . the *Talbott Defendants*, Dr. Buzard suffered damages." (Compl. ¶¶ 208, 210) (emphasis added). As stated previously, Defendant is one of the Talbott Defendants.

Defendant next distinguishes *Brainerd* from the case at hand. In *Brainerd*, an Arizona court was found to have jurisdiction over a Canadian resident. *Brainerd v. Governers of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). The court found jurisdiction because the Canadian resident conducted a telephone call with an Arizona resident regarding the plaintiff knowing that any injury arising from the telephone conversation would occur in Arizona. *Id.* at 1259.

Defendant contends *Brainerd* is distinguishable because Defendant made no negative comments against Plaintiff, did not participate in the telephone conference with the Foundation whereafter the results of Plaintiff's assessment were transmitted to Nevada, and his favorable report could not have caused harm to Plaintiff. However, while Plaintiff does not make specific references to Defendant's involvement in the alleged actions, Defendant is named as a Talbott Defendant, against whom allegations of intentional torts are alleged. Therefore, Defendant's distinction of *Brainerd* is unpersuasive.

### c. Causing Harm in the Forum State

Defendant next asserts that his favorable report of Plaintiff could not have caused harm in Nevada. In the Ninth Circuit, it is unclear as to the degree of harm that must be suffered in the forum state to meet the effects test. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112-13 (9th Cir. 2002). Either the brunt of the harm, *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9th Cir. 1993), or merely some significant amount of harm, must be suffered in the forum state. *Dole Food*, 303 F.2d at 1113; *see Keeton v. Hustler Magazine*, 465 U.S. 770, 773 (1984). Like *Dole Food*, this Court need not decide between these standards because under either, Plaintiff suffered sufficient harm in Nevada.

Defendant argues that Plaintiff's allegations create no link between Defendant's favorable report and Plaintiff's harm. Again, this argument fails to consider that Defendant is named as a Talbott Defendant, against whom Plaintiff successfully asserts caused his harm. After Plaintiff's discharge from Talbott, he returned to Nevada. There, he suffered the temporary loss of contracts with health care providers, injury to his reputation and business, and extreme mental distress, all as the result of the alleged intentional acts of the Talbott Defendants.

In light of the foregoing analysis, Plaintiff has satisfied the three elements of the "effects" test. The Court now turns to the remaining two elements of specific personal jurisdiction.

### 2. Claims Arising Out of Defendant's Activities

The Ninth Circuit applies a "but for" test to determine whether a particular claim arises out of forum-related activities. *Ballad v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Defendant argues that the only activity alleged against Defendant is that he conducted the initial assessment of Plaintiff in which he stated that there was "[n]o diagnosis or chemical dependence" and therefore Defendant's involvement in this action is diametrically in opposition to the causes of action.

//

1   The Court repeats that Defendant is named as a Talbott Defendant and finds that
2   Plaintiff successfully alleges that but for the Talbott Defendants' intentional acts, Plaintiff would
3   not have suffered the supposed harm.

**3. Reasonableness**

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, '[the defendant] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction. *Dole Food*, 303 F.2dd at 1114 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

In determining the reasonableness of personal jurisdiction, the court considers the following factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Harris Rutsky*, 328 F.3d at 1132. No one factor is determinative, rather the court is to balance all seven. *Id.*

Defendant argues it is unreasonable for this Court to assert personal jurisdiction over him. He states that it is unfair for him to defend his minimal involvement in this matter thousands of miles away from his hometown. He also argues that if forced to litigate the matter in Nevada, he will lose his ability to earn a living during the time he is away from Georgia and sees no reason why Plaintiff could not pursue his claims in Georgia.

Plaintiff responds to Defendant's reasonableness argument by asserting that Georgia has no interest in adjudicating this dispute. First, Plaintiff's medical license was issued by the State of Nevada. Second, Nevada has an interest in protecting its citizens from out-of-state actors who commit tortious acts against them. And third, it is reasonable for Defendant to foresee

1  that he would be held to answer before a Nevada court for any inappropriate behavior directly
2  affecting Plaintiff, a Nevada resident.
3        Plaintiff further encourages the Court to consider the judicial resources that would
4  be saved by having one lawsuit in Nevada.  Other named defendants in this litigation reside in
5  Nevada and this Court has already found jurisdiction over the other Talbott Defendants.  The
6  Court also notes that advancements in technology, communications, and travel will make litigation
7  before this Court less burdensome.
8        After a careful balancing of the factors, the Court finds that personal jurisdiction
9  over Defendant is reasonable.
10        Having found personal jurisdiction over Defendant, Defendant's 12(b)(2) motion is
11  denied.  The Court now turns to whether Plaintiff's complaint fails to state a claim upon which
12  relief can be granted.

13  **II. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**
14     **A. Standard**
15        Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may
16  dismiss a complaint for "failure to state a claim upon which relief can be granted."  "[A] complaint
17  should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff
18  can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*
19  *Gibson*, 355 U.S. 41, 45-46 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d
20  1475, 1481 (9th Cir. 1997).  All factual allegations set forth in the complaint "are taken as true and
21  construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136,
22  1140 (9th Cir. 1999).  Dismissal is appropriate "only if it is clear that no relief could be granted
23  under any set of facts that could be proven consistent with the allegations*." Hishon v. King &*
24  *Spalding*, 467 U.S. 69, 73 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th
25  Cir. 1988).
26

**B. Dr. Buzard's Complaint**

Defendant argues that Plaintiff's complaint alleges that only the Talbott Defendants made the false and defamatory statements against Plaintiff which led to the false diagnosis of drug dependency. His argument follows that because Defendant produced a favorable assessment, Plaintiff has not asserted that Defendant participated in the false and defamatory statements as alleged.

Plaintiff, on the other hand, offers additional facts not mentioned elsewhere in the record. For example, Plaintiff now tells the Court that Defendant was part of the "assessment committee" that approved Plaintiff's diagnosis and that Defendant prepared an insurance claim form that listed Plaintiff as opioid-dependent, actions that contradict Defendant's prior favorable assessment. Defendant urges the Court not to consider these allegations and to limit its review to the four corners of the complaint.

The Court need not consider Plaintiff's additional facts because it finds that Defendant is a Talbott Defendant, against whom Plaintiff has successfully alleged various causes of action within the four corners of the complaint. Accordingly, the Court denies Defendant's Rule 12(b)(6) motion and turns to Defendant's Rule 12(e) motion.

**III. Motion for a More Definite Statement under Fed. R. Civ. P. 12(e)**

**A. Standard**

A motion for a more definite statement should not be granted unless the pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). This liberal standard is consistent with Fed. R. Civ. P. 8(a) which allows pleadings that contain a "short and plain statement of the claim." Motions made under Rule 12(e) are disfavored and rarely granted because of the minimal pleading requirements of the Federal Rules. *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (*citing In re American Int'l Airways, Inc.*, 66 B.R. 642, 645 (E.D. Pa. 1986)). Parties are expected to use the discovery process, not pleadings, to learn the specifics of the claims being asserted. *Id.*

AO 72
(Rev. 8/82)

1  Where the substance of a claim has been alleged but some of the details have been omitted, the
2  motion will likely be denied. *Boxall v. Sequoia High School Dist.*, 464 F. Supp. 1104, 1113-14
3  (N.D. Cal. 1979).

   **B. Dr. Buzard's Complaint**

   Defendant argues that based upon Plaintiff's complaint, it will be impossible for him to draft a responsive pleading because the conduct attributed to Defendant–the favorable assessment–cannot be considered offensive. Plaintiff counters by reminding the Court that Defendant is a Talbott Defendant and all causes of action have been specifically alleged against Defendant as part of this group. However, Plaintiff does recognize by his own admission that he failed to allege that Defendant was present when the assessment committee made its final diagnosis as to his chemical dependency.

   Despite Plaintiff's admitted deficiency in the complaint, the Court believes that the complaint is nevertheless not so vague or ambiguous so as to prevent Defendant from drafting a response. The discovery process will supply Defendant with additional facts of his alleged specific involvement as the litigation proceeds. Therefore, the Court denies Defendant's Motion for Order Directing Plaintiff to Serve a More Definite Statement.

   **CONCLUSION**

   Accordingly, and for good cause appearing,

   IT IS HEREBY ORDERED that Defendant's Motion to Dismiss and, Alternatively, a Motion for an Order Directing Plaintiff to Serve a More Definite Statement (#111) are DENIED.

   Dated: September 7, 2006.

   _____
   **ROGER L. HUNT**
   **United States District Judge**